IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITES STATES OF AMERICA, | ) | |
|     Appellee | ) | |
| | ) | |
| v. | ) | Appeal No. 24-4474 |
| | ) | |
| DOUGLAS PHILLIPS | ) | |
|     Appellant | ) | |

MEMORANDUM REPLY BRIEF
IN SUPPORT OF RELEASE PENDING APPEAL

Mr. Phillips has shown a "substantial question of law or fact" likely to alter the outcome of this case. 18 U.S.C. § 3143(b)(1). The government argues that *Counterman v. Colorado*, 600 U.S. 66 (2023) does not apply to threats under 18 U.S.C. § 115, and that the district court therefore applied the correct legal standard by ignoring *Counterman*'s subjective requirement. The government is incorrect. Both the language of *Counterman* itself and of the circuit court cases interpreting it indicate that to constitute a threat in the first instance, the statement at issue must meet *Counterman*'s objective and subjective test. *Counterman* defines a threat unprotected by the First Amendment, and the district court committed an error of law in ignoring its subjective element. This error was not harmless, because the evidence presented at Mr. Phillips's supervised release violation hearing does not suggest that he consciously disregarded a substantial risk that his statement would be viewed as threatening.

The government is incorrect that *Counterman*, does not apply in the context of 18 U.S.C. § 115. *Counterman* explicitly describes the *mens rea* required of a speaker for his statement to be a true threat, subjecting him to criminal prosecution. *Id.* at 69 ("The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient."). *Counterman*, in other words, describes what is necessary for a statement to be a true threat subject to prosecution.

18 U.S.C. § 115 requires not only that an individual have made a true threat, but an additional element: that threat must be made with the specific intent to "impede, intimidate, or interfere with" an official in the performance of their official duties. As the Second Circuit recognized in *United States v. Hunt*, 82 F.4th 129, 134-35 (2d Cir. 2023), the first element—the existence of a threat—is satisfied where a) an ordinary, reasonable recipient who is familiar with the context of the communication would interpret it as a threat of injury; and b) the defendant made the communication at least recklessly by consciously disregarding the risk his communication would be viewed as threatening violence. *Id.* The second element—intent to intimidate, impede, or interfere— "is purely subjective, turning on the defendant's intent in making the threats." *Id.* at 135. *Counterman*, in other words, applies to define whether a statement constitutes a prosecutable "threat;" the specific intent to intimidate, impede, or interfere

addresses the additional intent with which that threat must be made for liability under section 115 to attach. Both elements must be present—a threat, comprising the objective and subjective requirements of *Counterman*—and a particular intent with which that threat must be made. *See also United States v. Garnes*, 102 F.4th 628, 636-37 (2d Cir. 2024) (noting that *Counterman* addressed "the constitutionally required elements of all criminal prohibitions of threatening statements" and recognizing that the specific intent requirement of § 115 constitutes "an additional element" beyond what is required by *Counterman*); *United States v. Roberson*, No. 23-5588, 2024 WL 2154285, at *5 (6th Cir. May 14, 2024) ("To prosecute a defendant for making threatening statements, the Supreme Court has held that the First Amendment requires the government to prove that the 'defendant had some subjective understanding of the threatening nature of his statements'") (citing *Counterman*, 600 U.S. at 69); *Sealed Plaintiff 1 v. Front*, No. 3:22-CV-00670, 2024 WL 1395477, at *29 (E.D. Va. Mar. 31, 2024) ("In *Counterman*, the Supreme Court articulated a subjective standard of recklessness for *criminal* prosecutions of true threats.") (emphasis in original).

The government argues that, because 18 U.S.C. § 115 contains a specific intent requirement, *Counterman* is inapplicable.[1] But that argument confuses the specific intent

---

[1] The government relies on *United States v. Gilmore*, 2024 WL 726431 (M.D. Fla. Feb. 22, 2024), but its reasoning is flawed for the reasons discussed in *Hunt, Garnes*, and *Dotson*. It was also before the district court on a motion to dismiss an indictment that alleged that the defendant *"[w]illfully and knowingly* did threaten to murder a Federal law enforcement officer, with intent to impede, intimidate, and interfere" with the officer

3

element of section 115—that the threat have been made with the specific intent to intimidate, impede, or interfere with an official—with the intent requirement for the underlying statement to be a threat subject to prosecution in the first place. A court must find there was a true threat, satisfying the requirements of *Counterman*, before turning to whether that threat satisfies section 115's additional *mens rea* requirement. In *United States v. Dodson*, No. 22-3998, 2024 WL 712494 (6th Cir. Feb. 21, 2024), the Sixth Circuit rejected a similar argument to the one the government makes here, noting that, in the context of 18 U.S.C. § 1513, the statute's specific intent requirement to retaliate against an informant was in addition to, rather than instead of, the subjective requirement for a statement to be threatening under *Counterman*. *Id.* at *6.

The intent to intimidate, obstruct or impede an official in the performance of their duties does not, in other words, supply the *mens rea* necessary to make a statement a threat; it is rather an additional element of the offense. Otherwise, under the government's theory, the intent to intimidate, obstruct, or impede an official in the performance of his duties would be the only *mens rea* necessary for a statement to be considered a threat. This makes little sense; a statement may be intended to intimidate,

---

in the performance of his duties. *Id.* at *4 (emphasis added). Confusingly, after stating that *Counterman* was inapplicable, the district court then held, "As for Gilmore's argument that the indictment contains surplus language of willingly and knowingly, *that result does not change as Counterman found that a recklessness standard applies." Id.* at *5 (emphasis added). It thus appears that the district court did not wholly disregard *Counterman* in the section 115 context.

4

obstruct, or impede without any understanding, much less intent, that it communicate a substantial risk of violence. It also flies in the face of *Counterman*'s aim to avoid chilling protected speech by requiring a culpable mental state. *See Counterman*, 600 U.S. at 75. And the "intent to impede, intimidate, or interfere with" an official in the performance of their duties is not, in itself, such a culpable mental state. If it were, any number of intimidating or obstructive, but not legally threatening, statements could presumably be criminalized.

Because the district court did not recognize that the first element—the existence of a threat—contained both a subjective as well as an objective component, the district court erred. This error was not harmless, as the government contends. First, the evidence of recklessness was not as overwhelming as the government contends. The statements Mr. Phillips reportedly made before, about which probation warned him, appear to have been substantially more aggravated than his statement to the deputy clerk. He told Dennis Gardner that if he saw his own brother again, he would kill him. Attachment A at 20. Notably, USPO Gardner did not treat that statement as a violation. *Id.* A prior probation officer also told him that "communicating threats over the airwaves" could result in new charges, but apparently did not explain what he considered to be threats. *Id.* Mr. Phillips's statement to the deputy clerk was both less violent and less concrete than his statement about his brother, and as such, the evidence does not suggest that he consciously disregarded a substantial risk that it would be

5

viewed as threatening, especially given that a prior, much more concrete statement did not result in a violation. Mr. Phillips testified that he did not intend to make a threat, nor did he think that his statements would be received as threatening. Attachment A at 34. He has struggled with his mental health, Attachment A at 54, and the evidence suggests that Mr. Phillips did not plan or intend his outburst; rather, he was frustrated and was venting, engaging in the kind of hyperbole that *Counterman* specifically recognized should not be considered a true threat.

The government relies on *United States v. Stewart*, 420 F.3d 1007, 1018-19 (9th Cir. 2005), for the proposition that sufficient evidence of an intent to impede, intimidate, or interfere with an official also amounted to sufficient evidence of a speaker's subjective intent to make a threat. But that decision predates *Counterman* and is factually distinguishable from Mr. Phillips's case. The defendant's threats in *Stewart* were made in prison against the judge who had presided over his prior trial. *Id.* at 1011. His threats were specific and brutal, and he offered an informant weapons and money if the informant could arrange the judge's killing. *Id.* His animus against the judge appeared to have begun when she refused to permit a particular line of defense at his trial. *Id.* at 1012. In other words, the defendant's threats in *Stewart* were directly related to and because of the judge's performance of her official duties, and evidence that he intended to impede or retaliate against her for presiding over his trial was also sufficient to show that he intended his threats.

6

Mr. Phillips's statement was quite different. It was conditional and made in a moment of venting about the lack of movement on his pro se motions. Even if the district court properly found that it was made with the specific intent to impede Dennis Gardner in the performance of his duties—and for the reasons discussed in the initial brief, this finding was error as well—that evidence does not suffice to show that Mr. Phillips consciously disregarded a substantial risk it would be perceived as a threat. The fact that Mr. Phillips wanted the court to order a different probation officer does not require that he intended the statements against Dennis Gardner as a threat. Indeed, Mr. Phillips had already filed pro se motions with the court—which were plainly not threats—seeking to have Mr. Gardner removed from his case. Thus, even if there were evidence sufficient to find that Mr. Phillips's statement to the deputy clerk was made with the intent to obstruct Mr. Gardner in the performance of his duties, that does not amount to evidence that he was reckless as to whether that statement would be treated as a threat.

<u>Conclusion</u>

For these reasons as well as those stated in his opening memorandum brief, Mr. Phillips has shown the existence of substantial questions likely to materially alter the outcome of his supervised release violation proceeding. Granting him bond pending appeal will allow him to bring these questions to decision before he is released from custody, and thus will serve both the development of the law in this area and the ends

of justice in avoiding what may be an unnecessary term of incarceration. Mr. Phillips therefore requests that this court reverse the district court's decision and grant bond under the same terms previously imposed pending the resolution of this appeal.

Respectfully submitted,

Douglas Phillips
By Counsel

/s/ Erin Trodden
Asst. Federal Public Defender
VSB 71515
401 E. Market St., Ste. 106
Charlottesville, VA 22902
Tel (434) 220-3396
erin_trodden@fd.org

# **CERTIFICATE OF SERVICE**

  I hereby certify that on September 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

                s/Erin Trodden
                Erin Trodden